IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC SAFFOLD, ) | |
| AIS #241510, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO. 1:07-CV-598-MHT |
| ) | [WO] |
| ) | |
| J. C. GILES, et al., ) | |
| ) | |
| Respondents. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Eric Saffold ["Saffold"], a state inmate, on June 21, 2007. In this petition, Saffold challenges a conviction for first degree robbery imposed upon him by the Circuit Court of Houston County, Alabama on May 3, 2005. The trial court sentenced Saffold to twenty-five years imprisonment for this conviction.

Saffold filed a direct appeal in which he challenged the sufficiency of the evidence presented to support his conviction for first degree robbery. *Respondents' Exhibit B - Court Doc. No. 6-4* at 8. Saffold also argued that the trial court erred in denying his motion to suppress a statement he made to police. *Id.* On August 13, 2004, the Alabama Court of Criminal Appeals affirmed Saffold's challenged conviction in a published opinion. *Respondents' Exhibit D - Court Doc. No. 6-6 -- Saffold v. State*, 951 So.2d 777 (Ala.Cr.App.

2006), *rehearing denied* (June 16, 2006), *cert. denied* (September 29, 2006). The relevant portion of this opinion reads as follows:

> Our review of the record reveals the following pertinent facts: At approximately 10:00 p.m. on September 26, 2004, Phillip Gradic, the owner of the Dairy Queen restaurant on South Alice Street in Dothan, and Kevin Guerra, who was employed as a cook at the Dairy Queen, were heading home after they had locked up for the evening. They exited the side door of the restaurant and headed toward Gradic's automobile. As they rounded the corner to the back of the building, Gradic, who testified that he had been robbed a few months earlier and tended to be more alert to his surroundings, saw someone standing in the area between where the walk-in cooler extended out of the back of the building and some bread racks, and this person was facing toward the back door of the building-the door that they had used several times that evening while they were changing the letters on the advertising sign. At trial, both Gradic and Guerra identified Saffold as the person they saw that evening. Gradic testified that he noticed that Saffold had a mask pulled over his face and that he was wearing a trench coat even though it was "T-shirt weather" that evening.
> 
> Gradic had a 9mm. gun in his pocket, and he pulled it out and pointed it at Saffold. When Saffold turned around, he stated, "I see you've got a gun, I'm not going to rob you." Gradic asked Saffold if he was armed, and Saffold told him that he was not. Gradic told Saffold to take off his mask, to lie down on the ground, and to place his hands where Gradic could see them. Saffold complied. Then Gradic telephoned the police on his cellular telephone. While Saffold was lying on the ground on his stomach, he kept trying to pull his hands under his chest, but Gradic told him to put his hands back where he could see them. Guerra looked around the area to make sure that there were not any other people waiting to help Saffold rob them because Saffold "had stated that there [were] other people watching him from around the buildings behind [the Dairy Queen]." Although both Gradic and Guerra testified that Saffold made no oral threats against them, Guerra testified that he was afraid during the encounter:
> "Q. All right. So you're behind-walking behind Phillip?
> "A. Yes.
> "Q. Do you notice anybody standing back there?
> "A. Not at first, until Mr. Gradic pulled his gun out. Then that's when I observed a man with a mask on.

"Q. Okay. So the first thing you know about it is when Phillip pulls out his gun?
"A. Yeah. Phillip pulls out his gun and he starts saying something. And then when I looked to the side, I saw a man with a mask on. So I'm like: Oh, my God, here we go again.
"Q. Did it scare you?
"A. Yeah, yeah. Because, I mean, somebody with a mask on, so-
"Q. Where do you see this man with the mask standing?
"A. There's a bread rack and there's a cooler. And he was standing like right there on the corner. So I told Phillip to go ahead and keep an eye on him and I'll go ahead check the store and make sure there's not more than one person.
"Q. All right. So you look around?
"A. Yeah.
"....
 "Q. Put it this way. You didn't hear him threaten either one of you, did you?
"A. The only thing I can tell you, Mr. Gradic told him to lie down, to lie down. And I told Phillip, 'I'll watch your back, I'm going to check the store.' Then Eric was up there, kept on saying something about, 'I'm not going to rob you, I'm not going to rob you, I'm running from somebody, I'm trying to hide from somebody,' you know. So what I was doing was going around the building to make sure there wasn't nobody else.
"Q. So the answer to the question about whether he threatened you is no?
"A. Well, no, not really. But I was scared because I wasn't sure if there was more than one person.
"Q. Right. But he didn't threaten you? I'm not talking about anybody else anywhere on Alice Street or the blocks behind Fortner or anywhere else.
"A. He didn't say nothing to me."

When the police officers arrived, Saffold told them, "Don't shoot me, I'm laying on a gun." The police officers handcuffed Saffold and when they rolled him over, they discovered that Saffold had a loaded rifle concealed in his trench coat, which was somehow attached to him by a string.

Saffold was transported to the police station where Jason DeVane, a corporal with the Dothan Police Department, read Saffold his Miranda Rights. Cpl. DeVane testified that Saffold indicated that he understood his rights; that Saffold indicated that he had not been drinking alcohol and that he was not under the influence of drugs; that Saffold did not appear to be under the influence of drugs or alcohol; that no promises, inducements, or threats were made; and that Saffold signed the waiver-of-rights form and gave a statement regarding the incident at the Dairy Queen restaurant. Cpl. DeVane stated that Saffold told him that "he was there to scare the employees to get them to give

him money." Cpl. DeVane further testified that Saffold identified the mask (State's Exhibit 1) as the mask "he was wearing when he was standing in the corner awaiting the employees to exit the store"; that Saffold also told him that the rifle (State's Exhibit 2) "was the rifle that he had tied around his shoulder underneath his jacket"; and that Saffold told him that he had been going to use the rifle to scare the employees so that they would give him money.

Saffold argues that the trial court erred in denying his motion for a judgment of acquittal because, he says, the State failed to prove a prima facie case of first-degree robbery. Specifically, Saffold contends that "[t]he State offered no evidence that Mr. Saffold used any force or threatened the imminent use of force upon Mr. Gradic or Mr. Guerra; therefore, this element of the crime fails and Mr. Saffold should have been acquitted of Robbery in the First Degree." In response, the State argues:

"Saffold does not argue in his brief that he was not armed with a weapon; rather, the crux of his argument is because the victim did not give him the opportunity to brandish his weapon or verbally demand money, the State failed to establish a prima facie case of first-degree robbery. The evidence proved otherwise."

"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" *Ballenger v. State*, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting *Faircloth v. State*, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" *Nunn v. State*, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting *O'Neal v. State*, 602 So.2d 462, 464 (Ala.Crim.App.1992). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" *Farrior v. State*, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting *Ward v. State*, 557 So.2d 848, 850 (Ala.Crim.App.1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." *Ex parte Bankston*, 358 So.2d 1040, 1042 (Ala.1978).

Section 13A-8-41, Ala.Code 1975, states:

"(a) A person commits the crime of robbery in the first degree if he

4

violates Section 13A-8-43 and he:

"(1) Is armed with a deadly weapon or dangerous instrument."

Section 13A-8-43, Ala.Code 1975, states:

"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:

"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or

"(2) ***Threatens the imminent use of force against the person of the owner or any person present*** with intent to compel acquiescence to the taking of or escaping with the property."

(Emphasis added.)

Section 13A-8-40(b), Ala.Code 1975, states:

"'In the course of committing a theft' embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission."

Section 13A-8-1(13), Ala.Code 1975, which is applicable to § 13A-8-43, see §13A-8-40(a), Ala.Code 1975, defines "threat" in part as "[a] menace, ***however communicated***, to ... [c]ause physical harm to the person threatened or to any other person." (Emphasis added.) "Menace" is defined in the Compact Oxford English Dictionary 1062 (2d ed.1994) in part as "[a] declaration or ***indication of hostile intention, or of a probable evil*** or catastrophe" (emphasis added); Merriam-Webster's Collegiate Dictionary 774 (11th ed.2003) defines "menace" in part as "a ***show of intention*** to inflict harm." (Emphasis added.)

In *Cook v. State*, 582 So.2d 592 (Ala.Crim.App.1991), this Court stated: "Section 13A-8-41 does not require that actual force be used to commit the theft; evidence of threatened or imminent force is sufficient. ***The proper inquiry is how the victim reacted to and perceived the threat***. *Kent v. State*, 504 So.2d 373 (Ala.Cr.App.1987). The statutory robbery provisions likewise do not require proof of an actual taking of property to support a conviction. *Breedlove v. State*, 482 So.2d 1277 (Ala.Cr.App.1985)."

582 So.2d at 593-94 (emphasis added). Likewise, consistent with §13A-8-1(13), this Court has held that evidence of a verbal threat is not necessary to establish the "threat of force" element necessary to support a robbery conviction, *see*, *e.g.*, *Coleman v. State*, 552 So.2d 156 (Ala.Crim.App.1988); the actions of the defendant, even when the defendant does not appear to possess a deadly weapon, may suffice to establish the threat of force if it appears to the victim that the defendant has the intention, ability,

and means to inflict harm, *see*, *e.g.*, *Welch v. State*, 630 So.2d 145 (Ala.Crim.App.1993).

The evidence presented in this case, viewed in the light most favorable to the State, indicated that Gradic saw Saffold hiding behind the building between the cooler and the bread racks; that even though it was a warm September evening, Saffold was wearing a mask and a trench coat; that Saffold was watching the back door of the Dairy Queen restaurant-which had been the door the employees had been using that evening while they were changing the letters on the advertising sign-waiting for the employees to leave after locking up for the evening; and that Gradic perceived at the time of his unexpected encounter with Saffold that, in light of Saffold's furtive presence at that time of night and the way he was dressed, Saffold intended to rob him and could use force to take his money.

Contrary to Saffold's contention, we do not think that it is relevant for purposes of our inquiry that Gradic and Guerra fortuitously saw Saffold before Saffold could expressly state his intentions or take any additional overt actions toward completion of the theft. Saffold's attire and his actions signaled his obvious purpose-he was lying in ambush waiting for someone to exit the rear door of the restaurant so that he could commit a robbery-and the potential and dangerous threat he posed was immediately apparent to both Guerra and Gradic, who felt the need to immediately pull his gun for protection. The threat posed by Saffold was in no way eliminated by the steps Gradic was able to take to apprehend Saffold and then to contact the police. It is also significant, we think, that even after Gradic had pulled his weapon and required Saffold to lie down on the ground on his stomach with his arms extended, there was still a threat of imminent force-Saffold attempted to pull his arms under his chest where Gradic could have reasonably (and, it turns out, correctly) believed he had concealed a loaded gun under the trench coat, and Saffold suggested to Gradic and Guerra that there were accomplices present at the scene who could have come to Saffold's aid.

In addition, Cpl. DeVane testified that Saffold admitted during the statement he gave to Cpl. DeVane that "he was wearing [a mask] when he was standing in the corner awaiting the employees to exit the store"; that "he was there to scare the employees to get them to give him money"; and that he had been going to use the loaded rifle concealed under his trench coat to scare the employees so that they would give him money.

The State presented sufficient evidence from which the jury could have inferred that Saffold threatened the imminent use of force against Gradic and Guerra. Therefore, we find no error in the trial court's denial of Saffold's

motion for a judgment of acquittal.

II.

Saffold also argues that the trial court erred in denying his motion to suppress his statement to the police. Specifically, Saffold argues that his statement to Cpl. DeVane should have been suppressed because, he says, he did not voluntarily and intelligently waive his rights. He argues that he was under the influence of crack cocaine at the time he signed the waiver-of-rights form and gave his statement and that he signed the waiver-of-rights form and gave a statement only because, he says, Cpl. DeVane said that the district attorney and the trial court would look more favorably on his case if he cooperated.

At the suppression hearing, Cpl. DeVane testified that before he took Saffold's statement, he asked Saffold if he was under the influence of drugs or alcohol and that Saffold told him that he was not. Cpl. DeVane further testified that, based upon his experience, Saffold did not appear to be under the influence of drugs or alcohol. Saffold testified at the suppression hearing that he had been smoking crack cocaine the entire day before he appeared at the Dairy Queen restaurant, but that he did not tell Cpl. DeVane that he was under the influence of crack cocaine because, he said, he wanted to cooperate with the authorities so that his bail would be set at a reasonable amount.

Saffold also testified at the suppression hearing that he signed the waiver-of-rights form and gave a statement because, he said, Cpl. DeVane told him that "it would look good ... [to] the judge and the D.A. if [he] cooperated", but Saffold admitted that Cpl. DeVane "never promised [him] anything as to bond or anything of that nature." Cpl. DeVane testified at the suppression hearing that he did not make any promises or offer any rewards or inducements to get Saffold to give a statement, but that he did tell Saffold "that if he cooperated and they asked, [he] would tell them whether [Saffold] was cooperative and gave a statement or uncooperative in not giving a statement."

In denying Saffold's motion to suppress the statement, the trial court stated:

"You have a police officer who testified that there are no threats, no coercions, no offers, no promises. And then you've got Mr. Saffold who testified that he told [Cpl. DeVane] he was not on drugs at the time, but he really was on drugs. So it's hard to put a lot of credibility into that.

"Said that the officer offered him a reward, but couldn't really remember much about it. He identified State's Exhibit 5 [the waiver-of-rights form] and remembers it; that was his signature on the form. He understood the rights form at the time and the officer never promised anything regarding bond.

7

> "So, you know, weighing and considering all that evidence, the Court finds that the officer complied with *Miranda*, and that said statement was voluntary, overcoming any presumption to the contrary."
>
> In *Eggers v. State*, 914 So.2d 883 (Ala.Crim.App.2004), this Court stated:
>
>> "'"The question of whether a confession was voluntary is initially to be determined by the trial court."' *Minor v. State*, 914 So.2d 372, 388 (Ala.Crim.App.2004), quoting *Jackson v. State*, 562 So.2d 1373, 1381 (Ala.Crim.App.1990). '[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court. Absent a gross abuse of discretion, a trial court's resolution of [such] conflict[s] should not be reversed on appeal.' *Sheely v. State*, 629 So.2d 23, 29 (Ala.Crim.App.1993) (citations omitted). '[A] trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, ... and is not to be reversed absent a clear abuse of discretion.' *Jackson v. State*, 589 So.2d 781, 784 (Ala.Crim.App.1991). 'When there is conflicting evidence of the circumstances surrounding an incriminating statement or a confession, it is the duty of the trial judge to determine its admissibility, and if the trial judge decides it is admissible his decision will not be disturbed on appeal "unless found to be manifestly contrary to the great weight of the evidence."' *Ex parte Matthews*, 601 So.2d 52, 53 (Ala.1992), quoting *Williams v. State*, 456 So.2d 852, 855 (Ala.Crim.App.1984). '"In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court."' *Kennedy v. State*, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting *Bradley v. State*, 494 So.2d 750, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986)."
>
> 914 So.2d at 899.
>
> We find no error in the trial court's denial of Saffold's motion to suppress his statement to Cpl. DeVane.
>
> For the foregoing reasons, the judgment of the trial court is affirmed.

*Saffold*, 951 So.2d at 778-783 (citations to record and briefs omitted) (footnote omitted).

Saffold initiated this 28 U.S.C. § 2254 action on June 21, 2007 in which he asserts the following claim for relief:

> The State failed to prove every element of the crime of Robbery First Degree; therefore, the Petitioner is factually innocent. The facts at the

> Petitioner's trial failed to prove that there was any intent on his part to commit the crime of robbery first degree. There was insufficient evidence to prove that a crime was committed and/or that the Petitioner had any intention to commit a crime. The Petitioner is factually innocent of the charge of Robbery First Degree and is therefore incarcerated unconstitutionally.

*Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 5.

In their answer to the petition, the respondents argue that Saffold's challenge to the sufficiency of the evidence entitles him to no relief as the state courts properly adjudicated this claim on the merits. *Price v. Vincent*, 538 U.S. 634, 123 S.Ct. 1848, 1852 (2003); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000).

Upon review of the § 2254 petition, the answer of the respondents, Saffold's response to the answer, the state court record, the opinion issued by the Alabama Court of Criminal Appeals on direct appeal and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

## II.  DISCUSSION

### A.  Actual Innocence - Independent Claim

To the extent Saffold alleges he is due federal habeas relief because he is innocent of the first degree robbery for which he stands convicted, the law is well settled "that '[c]laims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203

9

(1993). It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence [presented at trial or] that has emerged since the trial. 'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.' *Id*." *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (actual innocence not an independent claim). In accordance with the foregoing directives, Saffold is entitled to no relief from this court on any independent claim of actual innocence.

### B. Challenge to Sufficiency of the Evidence

This habeas case is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"]. "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price*, 538 U.S. 634, 638; *Williams*, 529 U.S. 362, 402. Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

The Court subsequently explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)." *Price*, 538 U.S. at 640. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*,

272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original).  "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...."  538 U.S. at 636, 123 S.Ct. at 1851.  As is clear from the foregoing, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts."  *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007).  The AEDPA "modified a federal habeas court's role in reviewing state prisoner

applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Saffold presented his federal habeas claim regarding sufficiency of the evidence to the Alabama Court of Criminal Appeals on direct appeal. After extensive discussion, the state appellate court decided this claim adversely to Saffold. An assessment of Saffold's sufficiency claim under the provisions of 28 U.S.C. § 2254(d)(1) is therefore appropriate. Saffold argues the State failed to present evidence sufficient to support his conviction for first degree robbery. In support of this argument, Saffold asserts "[t]here was insufficient evidence to prove that a crime was committed and/or that the Petitioner had any intention to commit a crime." *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 5. On direct appeal, the Alabama Court of Criminal Appeals reviewed all of the evidence presented at Saffold's trial and determined that under applicable state law the prosecution presented sufficient evidence to support Saffold's robbery conviction. *Saffold*, 951 So.2d at 778-781.

> The evidence presented in this case, viewed in the light most favorable to the State, indicated that Gradic saw Saffold hiding behind the building between the cooler and the bread racks; that even though it was a warm September evening, Saffold was wearing a mask and a trench coat; that Saffold was watching the back door of the Dairy Queen restaurant-which had been the door the employees had been using that evening while they were changing the letters on the advertising sign-waiting for the employees to leave after locking up for the evening; and that Gradic perceived at the time of his unexpected encounter with Saffold that, in light of Saffold's furtive presence at that time of night and the way he was dressed, Saffold intended to rob him and could use force to take his money.
> Contrary to Saffold's contention, we do not think that it is relevant for

purposes of our inquiry that Gradic and Guerra fortuitously saw Saffold before Saffold could expressly state his intentions or take any additional overt actions toward completion of the theft. Saffold's attire and his actions signaled his obvious purpose-he was lying in ambush waiting for someone to exit the rear door of the restaurant so that he could commit a robbery-and the potential and dangerous threat he posed was immediately apparent to both Guerra and Gradic, who felt the need to immediately pull his gun for protection. The threat posed by Saffold was in no way eliminated by the steps Gradic was able to take to apprehend Saffold and then to contact the police. It is also significant, we think, that even after Gradic had pulled his weapon and required Saffold to lie down on the ground on his stomach with his arms extended, there was still a threat of imminent force-Saffold attempted to pull his arms under his chest where Gradic could have reasonably (and, it turns out, correctly) believed he had concealed a loaded gun under the trench coat, and Saffold suggested to Gradic and Guerra that there were accomplices present at the scene who could have come to Saffold's aid.

  In addition, Cpl. DeVane testified that Saffold admitted during the statement he gave to Cpl. DeVane that "he was wearing [a mask] when he was standing in the corner awaiting the employees to exit the store"; that "he was there to scare the employees to get them to give him money"; and that he had been going to use the loaded rifle concealed under his trench coat to scare the employees so that they would give him money.

  The State presented sufficient evidence from which the jury could have inferred that Saffold threatened the imminent use of force against Gradic and Guerra....

*Saffold*, 951 So.2d at 781.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is to determine whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979).

> But this inquiry does not require [this] court to "ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

14

*Id*. at 318-319 (emphasis in original) (citations and footnote omitted). The *Jackson* inquiry does not focus on whether the trier of fact made the **correct** guilt or innocence determination but whether it made a **rational** decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Although a jury "may not base a verdict on mere speculation," it may permissibly draw a vast range of inferences from the evidence. *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990). Further, to be sufficient, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984).

Under Alabama law, actual force to commit a theft is not a requisite element of first degree robbery as "evidence of threatened or imminent force is sufficient. The proper inquiry is how the victim reacted to and perceived the threat. *Kent v. State*, 504 So.2d 373 (Ala.Cr.App. 1987). The statutory robbery provisions likewise do not require proof of an actual taking of property to support a conviction. *Breedlove v. State*, 482 So.2d 1277 (Ala.Cr.App. 1985)." *Cook v. State*, 582 S.2d 592, 593-594 (Ala.Cr.App. 1991). Moreover, in a trial regarding the elements of theft, "intent is a question for the jury." *Seaton v. State*, 645 So.2d 341, 343 (Ala.Cr.App. 1994). "'Intent ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence." *McCord v. State*, 501 So.2d 520, 528-529 (Ala.Cr.App. 1986); *McNabb v. State*, 887 So.2d 929, 978 (Ala.Cr.App. 2001) (intent may be inferred from any circumstances surrounding the alleged offense). Thus, it is clear the jury could reasonably infer from the evidence

presented at trial that Saffold, while armed with a deadly weapon, undertook actions which constituted a threat of the use of imminent force with intent to commit a theft of property.

The Alabama Court of Criminal Appeals did not decide Saffold's challenge to the sufficiency of the evidence "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 529 U.S. at 413, 120 S.Ct. at 1523. Consequently, the state appellate court's rejection of the sufficiency claim was not contrary to actual Supreme Court decisions. Further, a thorough review of the evidentiary materials submitted in this case establishes that the state court's rejection of Saffold's argument was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence presented by the parties. Thus, Saffold is not entitled to relief from this court on his challenge to the sufficiency of the evidence

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Eric Saffold be DENIED.

2. This case be DISMISSED with prejudice.

It is further

ORDERED that on or before March 18, 2010 the parties may file objections to the Recommendation. Objections must specifically identify the findings in the Recommendation to which the party is objecting. Frivolous, conclusive or general objections

will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues addressed in the Recommendation and shall bar the party from attacking on appeal factual findings contained in the Recommendation which are accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions issued by the former Fifth Circuit and handed down prior to September 30, 1981).

Done this 4th day of March, 2010.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE